## UNITED STATES, Appellee

v

## RAYMOND Q. COLLYMORE, Private, U. S. Marine Corps, Appellant

11 USCMA 666, 29 CMR 482

No. 13,998

Decided July 15, 1960

*Colonel Olin W. Jones,* USMC, and *Lieutenant Leo F. O'Brien,* USN, were on the brief for Appellant, Accused.

*Commander Louis L. Milano,* USN, and *Lieutenant Colonel J. E. Stauffer,* USMC, were on the brief for Appellee, United States.

GEORGE W. LATIMER, Judge:

The accused was tried for and convicted of the crime of impersonating an officer with intent to defraud a Staff Noncommissioned Officers' Club, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. A sentence to a bad-conduct discharge, suspended with provision for automatic remission, confinement at hard labor for three months, and forfeiture of $70.00 per month for the same period stands approved by intermediate reviewing authorities. Upon accused's petition, we granted review to determine the propriety of the instructions on sentence and the sufficiency of the evidence to prove certain elements of the alleged crime. The first insufficiency of proof asserted by the accused is that the record fails to support impersonation of any kind and the second alleged lack of evidence challenges the proof of intent to defraud.

As to the first evidentiary issue, there is evidence from which the court-martial could find beyond a reasonable doubt that the accused from August 8, 1959, through August 22, 1959, was introduced to designated noncommissioned officers as a lieutenant; that he fraternized with them under the guise of a person having received a commission in that rank; that he accompanied them to the Staff Noncommissioned Officers' Mess where he enjoyed the hospitality of the club; that he announced he was living in the Bachelor Officers Quarters and was assigned as a range official; that he went to a private home and accepted the hospitality of a United States Naval Civilian Nurse to whom he was introduced as a lieutenant; that during all of the time the noncommissioned officers addressed him as "Sir" or "Lieutenant" and not once did he ever speak out to disclose his true status; that the only time he ever suggested an impropriety about the impersonation—and parenthetically we note his remark indicated a guilty conscience—was when at one of the later introductions he said, "You guys had better knock this off or we're all going to get in trouble"; and that thereafter he continued to participate in the ruse.

There are other incidental details which we might mention, but we are certain the foregoing facts will support the finding of impersonation. And this conclusion is not weakened by the defense contention that the record does not show that the accused either wore the insignia of rank or personally declared that he was an officer. Actions speak louder than words, and accused's totality of conduct over the alleged period very effectively created the wrongful appearance that he was an officer and entitled to the privileges and perquisites of that class. We, therefore, find against the accused on this aspect of the controversy.

The question of the sufficiency of the evidence to support the findings of intent to defraud is much more difficult to resolve. We think there is substantial evidence to establish that accused received some otherwise unobtainable advantages of the club by concealing his true identity. However, as we read the rules, neither his true grade nor false rank would qualify him for the benefits of membership. It may well be that some of the noncommissioned officers who paid for his meals and drinks were individually wrongfully deprived of their money—a question we need not decide—but the specification alleges the club was victimized. The board of review, in a very strongly worded opinion, concluded it was defrauded because, "The use of club facilities including the purchase of food and drinks is a valuable privilege. When this privilege is obtained by the deceitful conduct of a person not entitled thereto, his acts are, in this Board's opinion, a fraud on the Club as a separate entity." And no doubt that is the theory upon which the case was tried. However, we believe the court-martial and reviewing authorities overlook an important ingredient which is necessary to support the conclusion. The privileges he obtained were not directly the result of a holding out to club

**667**

officials that he was an officer. Neither private nor officer could qualify for guest or membership privileges and so parading in the officers' rank would not entitle accused to any more benefits from the club than could be obtained by him in his proper grade. It thus appears to us that the accused merely changed his status from one unqualified class to another, and the club could not have been misled to believe it should extend privileges to him in his fictitious character. That entity, therefore, was not tricked or cheated to its detriment. While there may be philosophical reasons to support the contention that the club was bilked, we find they fail to reach the area of criminal responsibility as distinguished from moral reprehensibility. Accordingly, we conclude the record is insufficient to support a finding of intent to defraud as that term is used in criminal law. That deficiency, however, affects only the sentence, for it does not absolve accused of criminality for having impersonated an officer. Therefore, we move on to discuss that question.

In instructing on the maximum sentence, the president informed the court that the maximum sentence provided for the offense found was dishonorable discharge, three years' confinement, total forfeitures, and reduction. However, he went on to tell the members that, because of the jurisdictional limits of special courts-martial, they could not sentence the accused to more than a bad-conduct discharge, six months' confinement, and partial forfeitures. A majority of this Court in United States v Green, 11 USCMA 478, 29 CMR 294, held that a similar instruction under like conditions was prejudicially erroneous. That holding is dispositive of this issue.

In the light of the above-mentioned errors, the decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Navy for reference to a board of review to reassess the appropriateness of sentence under the principles announced in this decision.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

The principal opinion does not explicitly state whether the two offenses of impersonating an officer with intent to defraud and without that intent, both in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934, stand in the relation of greater and lesser crimes. Rather, the language used seems to indicate that my brother Latimer believes the existence of an intent to defraud goes only to the *quantum* of the sentence which may be adjudged. To the contrary, I deem it an essential element of the greater offense alleged and believe its deletion on the basis of insufficiency of proof permits approval of no greater degree of culpability than simple impersonation which, while conduct equally prejudicial to good order and discipline, is considerably less odious than the use of mummery to obtain a pecuniary advantage. In this respect, the relationship between two offenses is essentially similar to that between wrongful and dishonorable negotiation of worthless checks with the intent to deceive and the same misconduct lacking that specific state of mind. See United States v Downard, 6 USCMA 533, 20 CMR 254.

The major prejudice to the accused, of course, lies in the vastly greater punishment permissible for the major crime charged and found unsupported by the evidence. Hence, while the erroneous findings must also be set aside, the error may be fully purged by reassessment of sentence on the lesser offense. Accordingly, I am able to concur in the result reached by the author of the principal opinion.